IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                               Criminal Action No. 5:07CR18

JAMES MANGANELLI,

    Defendant.

## REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION TO SUPPRESS PURSUANT TO FRANKS V. DELAWARE BE DENIED

### I. Introduction

    A.    Background.

Defendant is the only defendant in a one count indictment charging him with being a felon in possession of a firearm and seeking forfeiture of the firearm.

    B.    The Motion.

Defendant's Motion to Suppress evidence pursuant to Franks v. Delaware. Doc. No. 16.

    C.    Recommendation.

I recommend defendant's Motion to Suppress Evidence pursuant to Franks v. Delaware be denied because defendant did not provide evidence that the law enforcement affiant deliberately lied or made allegations in reckless disregard for the truth in the affidavit.

### II. Facts

On Saturday, January 6, 2007, at approximately 1:08 a.m., a fire at the gift shop at 5 Bridge Street, Cameron, West Virginia, was reported to the Cameron Police Department. After an initial investigation, arson was suspected. Mr. Okel, the owner of the Cameron Pharmacy, located

adjacent to the gift shop, contacted the Cameron Police Department. Mr. Okel advised the authorities that he maintained a video surveillance system inside his store which included surveillance of a portion of Bridge Street. Mr. Okel further advised he had reviewed the video tape of the surveillance system at the time of the fire and he thought the police should look at the tape. Lt. Holtz of the Cameron Police Department, came to the pharmacy and viewed the video tape. Both Mr. Okel and Lt. Holtz thought defendant was on the video tape before the fire in the gift shop started.

Cameron Police Officer Matthews, who was investigating the arson, came to the pharmacy with Officer Osecky and both viewed the video tape. Matthew did not know defendant. Osecky did know defendant. Matthews saw a person with long gray hair and a beard walking back and forth on Bridge Street on the video tape. The person then walked across the street and stood in front of Miceli's Restaurant. The person then walked out of the camera's view. Shortly thereafter, a white, small four door automobile drove past the gift shop. Some short time later, smoke was observed on the video tape. A few minutes later the white car was on the video tape driving by the scene of the arson. Matthews decided to investigate defendant further.

Later that day, officer Matthews and other officers drove to defendant's residence to interview him. Upon arrival the officers noticed a small white four door vehicle which appeared to be the same as the vehicle appearing on the video tape. Matthews noted defendant had long gray hair, a gray beard and looked like the person on the video tape. Defendant was given a <u>Miranda</u> warning and agreed to an interview. When asked where he had been on Friday night, January 5, 2007, and early Saturday morning, January 6, 2007, defendant stated he went shopping in Moundsville, stopped at the Cameron Dragon Mart, and then went home. Defendant asked why he

2

was being questioned. The officers responded they were investigating a fire in Cameron. Defendant responded he saw fire trucks while at the Dragon Mart. The officers advised the fire was at 1:00 a.m. and the Dragon Mart closed at 10:00 p.m. Defendant then changed his statement and said he did stop his car near the fire and was told by others that the fire was electrical in nature. Defendant said he did not leave his car. The officers then told defendant he had been observed outside his car at the scene of the fire. Defendant then said he had exited his car and been watching the fire.

Officer Matthews then prepared an affidavit for a search warrant which stated as follows in pertinent part:

On Saturday morning the 6th Day of January 2007, at approximately 0108 hours. A citizen reported at the CPD station that the gift shop located on *5* Bridge Street, Cameron was on fire. The fire department was toned out by dispatch and Patrolman James Matthews proceed on foot to this location. Upon arrival Matthews could see that the store front door was broken out and a fire was burning inside. Officer Osecky attempted to put the fire out with two fire extinguishers. This only suppressed the flames for a short period, in a few minutes the fire again went out of control. Cameron VFD arrived shortly afterwards and attacked the fire; Limestone VFD, Moundsville VFD, and Rich Hill Township VFD also gave assistance.

The Masonic Temple Fraternity owns this building and the lessee is a Mr. Charles Okel of Cameron. Okel is the proprietor of the Cameron Pharmacy shop and has a vested financial interest in the gift shop, which burned; the pharmacy is adjacent to *5* Bridge Street. This business (pharmacy) maintains and contains a video surveillance system inside the store and one of the cameras has a limited outside view of Bridge Street. In this view one can see directly across the street into a closed business known as Miceli's Restaurant. This building has a recessed alcove with glass doors that act as a mirror, which allows any one watching the surveillance video to have a partial view of the gift shop.

Later on Saturday the 6th, Officer Matthews spoke with Mr. Okel in person. Mr. Okel explained that he had been watching footage on the surveillance system of a time period shortly before the fire and did take notice of an individual known to him that appeared to have set the fire. Mr. Okel contacted LT. Chuck Holtz, whom was working day shift at CPD. Lt. Holtz met with Mr. Okel and also viewed the tape and determined that he also knew this individual in the video footage.

Officer Matthews then did view the footage with Mr. Okel. In the video Officer Matthews did observe a male with long gray hair and a gray beard walk north on the sidewalk of Bridge Street,

stop at the intersection, of Bridge Street and Main Street pause for a moment while looking around and then walk back the same direction he had came, leave the coverage area of the video, then this person can be seen in the reflection of the Miceli's glass door, standing in the entrance of the gift shop. This person then walks across the street, into direct view of the camera, stands in the alcove of Miceli's with his back to the street. After a period of approximately 1-2 minutes then leaves. After the person leaves, approximately six minutes later a white four door economy type car is seen driving on the video past the gift shop. Then at approximately nine minutes after this person left the alcove of Miceli's smoke appears on the video. Then approximately ten minutes after the person leaves the alcove, the white four door car drives into the video footage again in the same direction. Mr. Okel did turn over voluntarily to Matthews the videotape and an evidence custody chain form was filled out for this tape.

The person in the video was identified by Mr. Okel, LT. Holtz and later by Patrolman S. White as a James Manganelli, RD 3 Box 107, Cameron, WV. DOB 08-20-1953. Officers Matthews, Osecky and White did travel to the residence of Manganelli in Cameron to speak with him about this incident. Matthews did take notice that upon arrival at the residence, a white four door car similar to the car in the video was parked in front of the residence and a check of the license showed that the car belongs to Manganelli. Upon being invited into the residence by Manganelli, Matthews observed that Manganelli had long gray hair and a gray beard and beared a resemblance to the person in the video. Matthews informed Manganelli of his Miranda Warning. Manganelli verbally acknowledged he understood his rights and agreed to talk to us.

Matthews asked Manganelli his whereabouts on late Friday early Saturday morning (5th and 6th) of January 2007. Manganelli explained he went shopping in Moundsville driving his van, came back to Cameron, stopped at the Dragon Mart purchased some cigarettes and went home and didn't stop anywhere else. Manganelli asked why, we wanted to know. It was explained that a fire occurred, he then stated, he was in town and saw the fire trucks when he was buying cigarettes at the Dragon Mart. When confronted with the observation that the Dragon Mart closes at 10pm. Manganelli couldn't explain this time lapse. Manganelli was informed that arson was suspected as the cause, Manganelli then stated he was told that the probable cause was an electrical problem.

When confronted with the observation that he said he did not stop or talk to any one, Manganelli then stated he stopped near the fire trucks and was told that (electrical problems) by two onlookers. Matthews asked Manganelli if he got out of his car and walked around. Manganelli stated that he did not, he just talked to those two people from his car and went home and unloaded his groceries and went to bed. Matthews then confronted
 Manganelli about the observation that he was seen at the scene of the fire, standing next to a fire truck by Mr. Okel.

Manganelli then stated yes, he did get out and walk around some at the fire, but then went straight home. Matthews then asked a direct statement as to why he was seen on video before the fire in front of the gift shop. Manganelli replied it was not him and he could see where this was leading to. Manganelli referenced a problem with the Mayor of Cameron and with a bad work

4

relationship with Katy Barber whom was presently the girlfriend of Mr.Okel. Katy Barber is also the person who manages the gift shop that was burned.

Manganelli again was asked why he set the fire and he denied any involvement. Matthews terminated the interview and all officers left the residence.

At CPD Matthews spoke on the phone with Laci Foster who was working the register at Dragon Mart on the evening of the 5th. She could not remember any person resembling Manganelli buying cigarettes and she also stated that the store was locked and everybody was out of the business by 1030pm. On Saturday Morning the scene was inspected by Fireman Ron Walker Whom has attended Arson Investigation School, Walker states that the fire has the appearance of being deliberately set.

Officer Matthews presented the affidavit to Marshall County, West Virginia, Magistrate Anderson on January 7, 2007. Magistrate Anderson issued a search warrant for defendant's residence. While executing the search warrant the officers found a .22 caliber rifle in defendant's residence. The officers believed defendant was a convicted felon so they returned to the Magistrate who issued a second search warrant for firearms. The officers seized a loaded .22 caliber Marlin semi-automatic rifle and ammunition.

### III. Motion to Suppress

A. Contentions of the Parties.

Defendant contends the affidavit prepared by Officer Matthews contains material misrepresentations. Specifically, defendant claims the video tape is inconclusive as to the identity of the individual seen in and around the gift shop on the morning of January 6, 2007 because it does not show a male with long gray hair and a gray beard. Defendant states "the videotape shows an individual with lighter colored hair". Defendant also contends the videotape does not show the person walking to the corner and stopping.

The government contends defendant has not made a substantial showing that a false statement was knowingly and intentionally included in the affidavit which would entitle defendant

to a Franks hearing. Further, the government says there was more than sufficient probable cause in the affidavit even if the alleged false identification was excluded.

  B. Discussion.

    Franks v. Delaware, 438 U.S. 154 (1978) holds that when a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, is included in an affidavit for a search warrant and the false statement is necessary to a finding of probable cause for the warrant to issue, the Fourth Amendment requires a hearing be held at defendant's request. If the affidavit is insufficient to establish probable cause without the false material, then the search warrant is invalid and all evidence seized pursuant to it must be suppressed.

    In this case, defendant correctly points out that the portion of affidavit stating the individual walking on Bridge Street " . . . , stop at the intersection of Bridge Street and Main Street pause for a moment while looking around and then walk back . . . ." is inaccurate. The affiant explained that is a logical inference from the videotape if one is familiar with that area of Cameron. Defendant also claims an inconsistency in the statements of the witnesses that they thought it was defendant in the videotape and the affidavit says the witnesses identified defendant on the videotape. These small discrepancies simply do not rise to the level of deliberate falsehood or reckless disregard of the truth. Defendant has not met his burden which would entitle him to a Franks hearing. Further there is more than ample probable cause in the affidavit without the claimed inaccurate statements.

C. <u>Recommendation</u>.

I recommend defendant's Motion to Suppress Evidence pursuant to <u>Franks v. Delaware</u> be denied because defendant did not provide evidence that the law enforcement affiant deliberately lied or made allegations in reckless disregard for the truth in the affidavit.

Because trial is imminent, any party who appears pro se and any counsel of record, as applicable, may, **by June 14, 2007**, file with the Clerk of the Court an original and two (2) copies of the written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to parties who appear pro se and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: June 8, 2007

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE